IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | CASE NO. CV00-HGD-1927-S |
| LARNETTA WILLIAMS, | ) ) ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

This above-entitled civil action is before the court on the motion for summary judgment filed by plaintiff, State Farm Mutual Automobile Insurance Company (State Farm) [Doc. #23]. The parties have consented to the exercise of jurisdiction by the magistrate judge pursuant to 28 U.S.C. § 636(c). In this action, plaintiff/counterclaim defendant, State Farm, requests a declaratory judgment regarding whether it is required to provide coverage for injuries sustained by defendant/counterclaim plaintiff, Larnetta Williams, by stacking the coverage of certain insurance policies issued to Williams' grandmother, Wilma Jones. Williams filed a counterclaim alleging breach of contract, bad faith, and fraud.

Larnetta Williams and her minor daughter, Shannen Williams, were involved in an accident with a "phantom" motorist on April 9, 1999, at approximately 3:22 p.m., while Williams was driving a 1996 Nissan Sentra

owned and insured by Jones. [Def. Answer at ¶5; Mann Aff., F-1, at 125]. At the time of the accident, Jones had seven insurance policies insuring seven different automobiles, including the Sentra driven by Williams. [Pl. Exhs. 2 and 3]. Williams claims that she is entitled to the $170,000 combined or "stacked" uninsured motorist (UM) benefits available under all of these policies. State Farm contends that Williams is entitled only to the $20,000 in UM limits available under the single State Farm policy issued to Jones insuring the 1996 Nissan that Williams was driving at the time of the accident. Williams' medical special damages and lost wages are $46,537. [Pl. Exh. F-27, at 1195].

Under the policies at issue, the uninsured motorist coverage defines "insured," in pertinent part, as:

1. the first **person** named in the declarations;
2. his or her **spouse**;
3. their **relatives**; and
4. any other **person** while occupying:
    a. your car . . .

[Pl. Exh. A, at 11]. An endorsement to the policy in effect at the time of the accident defines "relative" as "a person related to **you** or **your spouse** by blood, marriage, or adoption who lives primarily with **you**." [Pl. Exh. A, Amendatory Endorsement 6082V.1].

Plaintiff states that, under Alabama law, if Williams qualifies only as an "insured" under category 4, then she is insured only with respect to her use or occupancy of an insured vehicle and may not stack coverages on the other

vehicles insured by Jones. However, it concedes that if Williams is "insured" under category 3, as a "relative" of Jones (i.e., "lives primarily with" Jones), then Williams would be entitled to stack coverage of all of Jones' policies for a combined coverage amount of $170,000. [Doc. #24, Plaintiff's Brief in Support of Motion for Summary Judgment, at 4-5].

Larnetta Williams was named as a driver on all of the seven policies in question. She was named as the principal operator in the policy on the 1996 Nissan Sentra which she was driving at the time of the accident.[1]

There is conflicting evidence regarding the residence of Larnetta Williams. Some three months prior to the accident, Williams received a ticket for a moving traffic violation, the record for which showed her address as 4025 Terrace G, Fairfield, Alabama. The accident report also listed Williams' address as 4025 Terrace G, Fairfield, Alabama. However, at her deposition, Williams first stated that this address was put on her license at a time when she actually lived at that location with her grandmother but that they later moved to 316 Church Street, and she did not bother ever to get the address changed. [Doc. #23, Pl. Exh. A at 38]. She asserts that she was unconscious after the accident

---

[1] Despite any contention to the contrary, the plain language of the policy makes it clear that there is a difference between being a "named driver" and being the "insured." Plaintiff does not contest the fact that Williams is an "insured" under the policy covering the Nissan Sentra; however, it contends that she was not occupying any of the other six vehicles and does not meet the definition of "relative" so as to qualify for coverage under the remaining policies.

3

and presumes the investigating officer got the address he put on the report from her license.

Williams gave a recorded statement on May 17, 1999, wherein she claimed that she had been living at her grandmother's house, located at 4025 Terrace G, Fairfield, until the two of them moved to the residence at 316 Church Street some four years preceding the accident (i.e., since 1995). [Pl. Exh. F-2, at 149]. Numerous hospital records and billing statements were mailed to Williams at the Church Street address by Carraway Hospital subsequent to the accident. Likewise, State Farm sent certified mail to Williams at the Church Street address on several subsequent occasions. Plaintiff's grandmother, Wilma Jones, also asserts that Williams was a resident of 316 Church Street at the time of the accident. [Def. Exh. 1, Aff. of Wilma Jones].

At her deposition, however, Williams later stated that she got a driver's license for the first time in 1998 and used the address of 4025 Terrace G, Fairfield, Alabama, on that occasion. [Def. Exh. 14, Depo. of Larnetta Williams, at 44-48]. Contrary to her earlier explanation that she had lived at the 4025 Terrace G address when she first got her license and then never changed it, Williams explained that her grandmother still owned this residence, that it stayed in her memory "as a little girl coming up," that was the one she was "familiar with," and so it was the first one she gave. [Compare *id.* at 38 with *id.* at 49].

4

State Farm Senior Claim Representative Derrick Kidd was advised by letter on April 26, 1999, that Adedapo Agboola of the law firm of Bender and Agboola represented Williams and to advise that Williams had been run off the road by a hit-and-run driver, giving Williams a potential claim for UM coverage. [Pl. Exh. F-21 at 993]. Kidd wrote Agboola on April 27 requesting permission to obtain Williams' recorded statement. [Pl. Exh. 20 at 989]. He later provided firm member Darryl Bender certificates of coverage for the policies in force in Jones' household, noting the absence of Williams' name on any policies in force. Kidd requested Bender to provide information indicating that Williams had coverage in her name. [Pl. Exh. F-19 at 963]. Bender responded that Williams was an "insured person" under all of Jones' policies as a member of her household. [Pl. Exh. F-18 at 959-61].

On May 21, 1999, Kidd contacted the office of the agent of record on the Nissan policy, Joyce Ladd, to find out if addresses were listed for the additional drivers on Jones' policies. [Pl. Exh. E-6 at 1279; Pl. Exh. C at 25-26]. Kidd was informed that Wilma Jones had told Ladd's office staff on the date of the accident that she only had a grandson living with her and did not understand why it mattered that Williams did not live with her at the time of the accident. [Pl. Exh. E-6 at 1279; Pl. Exh. C at 25-26; Pl. Exh. E at 48]. Jones denies having done this. [Def. Exh. 1, Aff. of Wilma Jones].

On June 24, 1999, Kidd forwarded Williams a draft in the amount of $20,000 (the limits of the UM coverage under the Nissan policy). [Pl. Exh. F-16 at 949]. The letter also explained that State Farm's investigation had shown conflicting addresses for Williams, including 316 Church Street, 4025 Terrace G, and at least four other addresses. [Pl. Exh. F-16 at 949; Pl. Exh. C at 27-28]. Kidd requested that Williams' attorney provide additional information regarding Williams' place of residence. [*Id.*]. Williams' attorney responded by returning State Farm's $20,000 draft and by stating that Williams' recorded statement regarding her residency at 316 Church Street was sufficient. [Pl. Exh. F-15 at 913-15].

On August 16, 1999, Kidd informed Williams' attorney that State Farm would be obtaining an outside legal opinion on the issue of Williams' residency. [Pl. Exh. F-14 at 893]. Michael Beard of the then-law firm of Rives & Peterson was requested to do this investigation. [*Id.* at 890-91; Pl. Exh. C at 40]. After attempting to investigate the matter, Beard advised State Farm on December 7, 1999, that he was unable to reliably resolve the residency question inasmuch as "the issue of whether one resides in the household of another or 'principally resides' is a question of fact." [Pl. Exh. F-11 at 856-58]. Beard recommended the filing of a declaratory judgment action so that State Farm would have the benefit of formal discovery to gain additional information. [*Id.*].

On December 15, 1999, Agboola demanded the $170,000 stacked UM limits for Larnetta Williams [Pl. Exh. F-23 at 1049] and $54,438.85 in UM benefits for Shannen Williams. [Pl. Exh. F-24 at 1060-71]. The claim regarding Shannen Williams was resolved later under the Nissan policy and is no longer an issue. [Pl. Exh. F-4 at 730].

On January 5, 2000, State Farm's claims counsel, Frank Tatom, supplied State Farm with some prior research regarding the absence of authority construing the "lives primarily with" policy language. [Pl. Exh. F-25 at 1155-83]. He also provided the "Auto Claim Committee Report" which recommended that State Farm follow Beard's advice and file a declaratory judgment action in an effort to resolve the residence coverage issue. [Pl. Exh. F-27 at 1189-1215].

On January 14, 2000, the services of an investigator, Joseph T. Limbaugh, were engaged by Beard to do a record search on Larnetta Williams and to interview neighbors at the various addresses in order to attempt to determine the residence of Williams. [Pl. Exh. F-10 at 848-50]. Limbaugh was able to link Williams to several addresses including 4013 and 4025 Terrace G, Fairfield, Alabama, and 457 Flint Hill Road in Bessemer, Alabama. However, he was unable to establish that she lived at any of these addresses in April 1999.

Limbaugh reported that he spoke with Andrew Gilmore, the postal worker who delivered mail to 316 Church Street. According to Limbaugh, it was

Gilmore's recollection that Williams began to get mail at this address in May or June of 1999. Gilmore recalled talking to a woman who was seen on the porch of the Church Street address wearing some sort of device on her neck; she told him she had been involved in an accident and had to move to her mother's house to recuperate.[2] [Pl. Exh. F-9 at 840-44]. Williams denies having said this. [Def. Exh. 14, Depo. of Larnetta Williams, at 58-59]. Subsequently, Gilmore provided Williams with an affidavit stating that he recalled seeing and delivering mail to Williams at the 316 Church Street residence prior to the time that he saw her wearing the device on her neck (i.e., prior to April 9, 1999) and could not say for sure whether she told him she was going to move out of or into that residence. [Def. Exh. 21, Aff. of Andrew Gilmore].

On March 2, 2000, Agboola requested a status report on Williams' claim. [Pl. Exh. F-8 at 834]. Kidd responded on March 7, stating that State Farm was still willing to issue the $20,000 draft under the Nissan policy with the understanding that this check would not release Williams or State Farm from the additional policies that may be determined to be applicable for the loss in the future. He further stated that the determination of applicability of the policies was still ongoing. [Pl. Exh. F-7 at 830-32]. Kidd requested that Williams provide him with any correspondence, employment records or school

---

[2] It apparently is undisputed that Williams was hospitalized from April 9, 1999, until April 15, 1999, as a result of the accident and that, upon her discharge from the hospital, she wore a medical device on her head and neck known as a "halo."

8

records reflecting that Williams or her daughter resided at 316 Church Street. [*Id.*]. None ever were provided. [Pl. Exh. C, Depo. of Carlton Mann, at 32-33].

The complaint for declaratory judgment was filed on July 12, 2000. Williams answered on April 9, 2001, and filed the counterclaims noted above.

## DISCUSSION

### Declaratory Judgment

With regard to plaintiff's motion for summary judgment, it is clear that there is a disputed factual issue concerning whether Williams "lived primarily with" the policy holder, Wilma Jones. A credibility assessment cannot be based on that which has been submitted by the parties. Therefore, State Farm's motion for summary judgment seeking a declaration that it only owes Williams UM policy limits on the Nissan Sentra policy is due to be denied.

### Estoppel

Williams contends that State Farm is estopped from denying that she was not insured under her grandmother's policies. She bases this argument on the fact that a State Farm agent testified that it is not necessary for a party to be living at Jones' residence to be added as a driver to the policy and on the authority of *United Fidelity and Guaranty Co. v. McKinnon*, 356 So.2d 600 (Ala. 1978). In that case, an insurer was estopped to deny that the plaintiff was the insured under a policy where an agent of the insurer had knowledge that the

9

plaintiff resided elsewhere than the household of the named policy holder, made representations that the plaintiff was covered, and where these representations were relied upon by the plaintiff and the named policy holder.

The doctrine of estoppel, however, is not applicable here. There is a difference between being a "driver" and a named "insured" under the State Farm policies. Drivers were named so that State Farm would know who would be driving the named insured's vehicles. It was not a requirement that a driver be a member of Jones' household to be a named driver. This does not lead to the conclusion that any named driver is a named insured. The terms of the policy are clear that any driver of Jones' vehicles, including Williams, was insured as to that vehicle, but would only be insured under all the policies if the driver was also Jones' spouse or a relative as the latter term is defined in the policy.

*McKinnon* is inapplicable to this case. In *McKinnon*, the policyholder had requested that the plaintiff be added as a named insured, was told that she would be and, when her name did not appear on the next policy, was further told that she was, nevertheless, covered under the policy to the extent requested. There are no such representations in the present case.

**Breach of Contract**

Plaintiff asserts that it is not liable to defendant under the breach of contract counterclaim because the insured must be able to prove the extent of the damages to which he or she would be entitled, citing *LeFevre v. West berry*, 590 So.2d 154, 159 (Ala. 1991).

Since State Farm offered the policy limits under the Nissan policy, it cannot have breached that contract. However, contrary to State Farm's assertion, Williams has made a showing as to the extent of her damages. She has medical damages and lost wages totaling in excess of $46,000. While Williams claims that she is entitled to the full $170,000 in uninsured motorist coverage, the evidence reflects the special damages to be considerably less. Damages for such things as pain and suffering and emotional distress have not been established. Such damages are difficult to evaluate. Nevertheless, the special damages established exceed the $20,000 coverage afforded by the Nissan policy. By seeking the declaratory judgment, State Farm is, in effect, denying that it owes coverage under these policies. Therefore, discovery having been completed, Williams has established special damages of $26,351, above the coverage available under the Nissan policy which State Farm is liable to pay if she is covered by any of Jones' other policies. Therefore, State Farm's motion for summary judgment with regard to Williams's breach of contract claim is due to be denied.

**Fraudulent Statements**

Williams has failed to establish any statements which she claims were fraudulent. She presented no argument in opposition to State Farm's motion for summary judgment as to this claim. Therefore, the motion for summary judgment as to Williams' counterclaim for fraud is due to be granted.

**Bad Faith Failure to Pay**

Refusal of an insurer to pay a claim, so as to entitle the insured to an award of damages for bad faith, means a frivolous and unfounded failure to pay a valid claim. *Phillips v. State Farm Mutual Auto. Ins. Co.*, 437 F.2d 365, 369 (5th Cir. 1971).[3]

In Alabama, bad faith is present when there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact, or (2) the intentional failure to determine whether or not there was any lawful basis for such refusal. *Chavers v. National Sec. Fire & Cas. Co.*, 405 So.2d 1, 7 (Ala. 1981). Where a declaratory judgment action is brought in good faith based on a reasonable argument that insurance policies did not provide coverage for the liability incurred, there is no bad faith refusal to pay. *Am. Family Life Assurance Co. of Columbus, Ga. v. United States Fire Co.*, 885 F.2d 826, 834 (11th Cir. 1989).

---

[3] Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

12

State Farm brought this action after conducting an independent investigation through outside counsel to try to determine if Williams was part of the Jones household so as to qualify for the stacked coverage. The outside counsel received conflicting information as to Williams' true address and recommended the declaratory judgment action to obtain a judicial determination. The uncontradicted evidence reflects that Williams had a driver's licence with the Terrace G address on it and has stated that she used that address when she got her first driver's license in 1998 despite her current claim that she had lived at the Church Street address with Jones since 1995. Furthermore, plaintiff was advised by the postal employee who delivered mail to 316 Church Street that he had been told by someone wearing a "halo" that she had moved in with her grandmother to recover from an accident. While this witness, Andrew Gilmore, later retreated somewhat on what he initially told plaintiff's investigator, plaintiff had a sworn statement from Gilmore prior to filing the declaratory judgment action indicating that Williams did not live at the Church Street address until after the accident.

In order to defeat a bad faith claim as a matter of law, State Farm need not show that its claims decision was correct, only that it was arguable. *ALFA Mutual Ins. Co. v. Smith*, 540 So. 2d 691, 695 (Ala. 1988), quoting *McLaughlin v. Alabama Farm Bureau Mutual Cas. Ins. Co.*, 437 So. 2d 86, 91 (Ala. 1983). The evidence clearly reflects that State Farm fully evaluated Williams' claim,

retained outside counsel to explore the coverage issues, and determined that only a declaratory judgment action could resolve Williams' entitlement to the stacked benefits.

Because State Farm had an arguable basis for its claims decision in this case made after a full evaluation, State Farm's motion for summary judgment as to the claim of bad faith is due to be granted.

A separate order in conformity with this memorandum opinion will be entered contemporaneously herewith.

DONE this 24th day of January, 2003.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE